UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| PAMELA JANE OWENS,<br><br>Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>Defendant. | NO. C14-441-JLR-JPD<br><br>REPORT AND RECOMMENDATION |

Plaintiff Pamela Jane Owens appeals the final decision of the Commissioner of the Social Security Administration ("Commissioner") which denied her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-33, after a hearing before an administrative law judge ("ALJ"). For the reasons set forth below, the Court recommends that the Commissioner's decision be REVERSED and REMANDED.

I.   FACTS AND PROCEDURAL HISTORY

At the time of the administrative hearing, plaintiff was a fifty-five year old woman with a high school education. Administrative Record ("AR") at 37. Her past work experience includes employment as an administrative assistant, grocery checker, retail salesperson, customer service representative, mortgage clerk, and office manager. AR at 38, 50-51.

REPORT AND RECOMMENDATION - 1

Plaintiff was last gainfully employed for six weeks as an administrative assistant at HydroFlow in 2012. AR at 38.

On April 22, 2011, she filed an application for DIB, alleging an onset date of September 25, 2010. AR at 18. Plaintiff asserts that she is disabled due to lower back pain, depression, migraine headaches, and anxiety. AR at 60, 76, 93.

The Commissioner denied plaintiff's claim initially and on reconsideration. AR at 93, 98. Plaintiff requested a hearing, which took place on September 17, 2012. AR at 34-58. On October 18, 2012, the ALJ issued a decision finding plaintiff not disabled and denied benefits based on his finding that plaintiff could perform her past relevant work of data entry. AR at 27. Plaintiff's request for review by the Appeals Council was denied, AR at 1-6, making the ALJ's ruling the "final decision" of the Commissioner as that term is defined by 42 U.S.C. § 405(g). On March 26, 2014, plaintiff timely filed the present action challenging the Commissioner's decision. Dkt. 1.

## II.   JURISDICTION

Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## III.   STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in

medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

The Court may direct an award of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)). The Court may find that this occurs when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence.

*Id.* at 1076-77; *see also Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (noting that erroneously rejected evidence may be credited when all three elements are met).

## IV. EVALUATING DISABILITY

As the claimant, Ms. Owens bears the burden of proving that she is disabled within the meaning of the Social Security Act (the "Act"). *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (internal citations omitted). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment which has lasted, or is expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is disabled under the Act only if her impairments are of such severity that she is unable to do her previous work, and cannot, considering her age, education, and work experience, engage in any other substantial gainful activity existing in the

REPORT AND RECOMMENDATION - 3

national economy. 42 U.S.C. §§ 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Commissioner has established a five step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act. *See* 20 C.F.R. §§ 404.1520, 416.920. The claimant bears the burden of proof during steps one through four. At step five, the burden shifts to the Commissioner. *Id.* If a claimant is found to be disabled at any step in the sequence, the inquiry ends without the need to consider subsequent steps. Step one asks whether the claimant is presently engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b).[1] If she is, disability benefits are denied. If she is not, the Commissioner proceeds to step two. At step two, the claimant must establish that she has one or more medically severe impairments, or combination of impairments, that limit her physical or mental ability to do basic work activities. If the claimant does not have such impairments, she is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations. 20 C.F.R. §§ 404.1520(d), 416.920(d). A claimant whose impairment meets or equals one of the listings for the required twelve-month duration requirement is disabled. *Id.*

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). Here, the Commissioner evaluates the physical and mental demands of the claimant's past relevant work

---

[1] Substantial gainful activity is work activity that is both substantial, i.e., involves significant physical and/or mental activities, and gainful, i.e., performed for profit. 20 C.F.R. § 404.1572.

to determine whether she can still perform that work. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is able to perform her past relevant work, she is not disabled; if the opposite is true, then the burden shifts to the Commissioner at step five to show that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Tackett*, 180 F.3d at 1099, 1100. If the Commissioner finds the claimant is unable to perform other work, then the claimant is found disabled and benefits may be awarded.

## V. DECISION BELOW

On October 18, 2012, the ALJ issued a decision finding the following:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2015.

2. The claimant has not engaged in substantial gainful activity since September 25, 2010, the alleged onset date.

3. The claimant has the following severe impairments: migraine headaches, low back pain, attention deficit hyperactivity disorder, depression and anxiety.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b), meaning that she can lift 20 pounds occasionally and 10 pounds frequently, and that she can stand/walk and sit for six hours in an eight-hour day. Additionally, she can perform simple and some complex work (semi-skilled) that does not involve more than occasional interaction with others.

6. The claimant is capable of performing past relevant work of data entry. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity.

    7.      The claimant has not been under a disability, as defined in the Social Security Act, from September 25, 2010, through the date of this decision.

AR at 20-28.

## VI.    ISSUES ON APPEAL

The principal issues on appeal are:

1.    Did the ALJ err in evaluating the medical opinion evidence?

2.    Did the ALJ err in evaluating plaintiff's credibility?

3.    Did the ALJ err at step four?

Dkt. 13 at 2; Dkt. 14 at 1.

## VII.    DISCUSSION

### A.    <u>The ALJ Erred in Evaluating the Medical Opinion Evidence</u>

*1.    Standards for Reviewing Medical Evidence*

As a matter of law, more weight is given to a treating physician's opinion than to that of a non-treating physician because a treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989); *see also Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). A treating physician's opinion, however, is not necessarily conclusive as to either a physical condition or the ultimate issue of disability, and can be rejected, whether or not that opinion is contradicted. *Magallanes*, 881 F.2d at 751. If an ALJ rejects the opinion of a treating or examining physician, the ALJ must give clear and convincing reasons for doing so if the opinion is not contradicted by other evidence, and specific and legitimate reasons if it is. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1988). "This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* (citing *Magallanes*, 881 F.2d at 751). The ALJ must do more than

merely state his/her conclusions. "He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id*. (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)). Such conclusions must at all times be supported by substantial evidence. *Reddick*, 157 F.3d at 725.

The opinions of examining physicians are to be given more weight than non-examining physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Like treating physicians, the uncontradicted opinions of examining physicians may not be rejected without clear and convincing evidence. *Id.* An ALJ may reject the controverted opinions of an examining physician only by providing specific and legitimate reasons that are supported by the record. *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005).

Opinions from non-examining medical sources are to be given less weight than treating or examining doctors. *Lester*, 81 F.3d at 831. However, an ALJ must always evaluate the opinions from such sources and may not simply ignore them. In other words, an ALJ must evaluate the opinion of a non-examining source and explain the weight given to it. Social Security Ruling ("SSR") 96-6p, 1996 WL 374180, at *2. Although an ALJ generally gives more weight to an examining doctor's opinion than to a non-examining doctor's opinion, a non-examining doctor's opinion may nonetheless constitute substantial evidence if it is consistent with other independent evidence in the record. *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Orn*, 495 F.3d at 632-33.

        2.    *Dr. Jacobsen*

Dr. Jacobsen has been plaintiff's treating physician since 1996. AR at 445. On February 23, 2012, he completed a check-box residual functional capacity questionnaire for plaintiff. AR at 445-49. He noted that plaintiff's symptoms included lower back pain, shoulder pain, hip pain, and knee pain, and stated that her pain is "constantly" severe enough to

REPORT AND RECOMMENDATION - 7

interfere with the attention and concentration required to perform simple work-related tasks. AR at 445. He stated that plaintiff needed to recline or lie down in excess of standard workday breaks during an eight-hour workday. AR at 445. He opined that plaintiff can walk "less than 1" block without rest or significant pain, sit for 30 minutes at a time, and stand/walk for 5 minutes at a time. AR at 445. In addition, he estimated that she can sit for a total of six hours in an eight-hour workday and stand/walk less than 1 hour in an eight-hour workday. AR at 445. He opined that plaintiff needs to be able to shift positions at will, and will need to take a five minute break on an hourly basis. AR at 445.

With respect to her ability to lift and carry, he opined that plaintiff can only "occasionally" lift and carry ten pounds or less in a competitive work situation, where "occasionally" is defined as "less than 1/3 of the eight-hour workday." AR at 446.[2] With respect to her ability to reach, handle, and finger objects, Dr. Jacobsen opined that plaintiff can only grasp, turn or twist objects 5% of an eight-hour workday, manipulate objects with her fingers 10% of an eight-hour workday, and reach 1% of an eight-hour workday. AR at 446. Finally, he opined that plaintiff is likely to be absent from work three to four times per month, and is not capable of full-time work. AR at 446.

Dr. Jacobsen also completed a mental capacity assessment on the same date. AR at 447-49. He listed plaintiff's diagnoses as chronic low back pain, shoulder instability, and major depression. AR at 447. With respect to plaintiff's understanding, memory, concentration and persistence, Dr. Jacobsen opined that plaintiff was markedly limited in her ability to understand and remember detailed instructions, carry out detailed instructions, maintain attention and concentration for extended periods, sustain an ordinary routine without

---

[2] Dr. Jacobsen noted that plaintiff can "never" lift 20 pounds or 50 pounds in a competitive work situation. AR at 446.

REPORT AND RECOMMENDATION - 8

special supervision, complete a normal workweek without interruptions from psychologically based symptoms, and perform at a consistent pace with a standard number and length of rest periods. AR at 447-48. In addition, he found her extremely limited in her ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances. AR at 447. He did not assess any marked social limitations, but found plaintiff markedly limited in her ability to travel in unfamiliar places/use public transportation and set realistic goals or make plans independently of others. AR at 448-49. When asked to "describe the medical/clinical findings that support this assessment," Dr. Jacobsen wrote, "major depression, chronic pain syndrome, migraines, chronic low back (sic)." AR at 449.

The ALJ afforded Dr. Jacobsen's opinion "little weight because it is inconsistent with even the claimant's own testimonial admission that she could lift 10 to 20 pounds. Dr. Jacobsen also completed a mental capacity questionnaire, indicating that the claimant had only slight limitations with the ability to get along with coworkers but that she had moderate to extreme limitations in concentration. This opinion is given little weight because it is not supported by the claimant's ability to read for an hour at a time, her performance during her consultative examination, or by the other medical evidence of record." AR at 27.

Plaintiff argues that the ALJ erred by rejecting Dr. Jacobsen's opinion based upon plaintiff's testimony that she can lift "ten to 20 pounds, 20 is pushing it." Dkt. 13 at 15 (citing AR at 47). Plaintiff points out that this testimony was in response to a question about how much weight she could lift, and therefore her testimony that she can "perhaps lift a maximum of twenty pounds at one time does not contradict Dr. Jacobsen's opinion that she could lift and carry 10 pounds for 1/3 of the workday or less." Dkt. 13 at 15 (AR at 47, 446). Plaintiff argues that the ALJ "did not address the other significant limitations Dr. Jacobsen identified or provide any reason for why those limitations should not be adopted in the RFC." *Id*. at 15-16.

REPORT AND RECOMMENDATION - 9

With respect to Dr. Jacobsen's mental capacity questionnaire, plaintiff contends that "the ALJ failed to explain how the ability to read for an hour undermines Dr. Jacobsen's opinion, or identify how the consultative examination and 'other medical evidence' contradict Dr. Jacobsen's findings." *Id*. at 16. Plaintiff points out that Dr. Jacobsen was plaintiff's primary care physician at Everett Clinic, where plaintiff was treated more than 25 times between January 2010 and May 2012, and he performed physical examinations, prescribed medication for plaintiff's impairments, and referred her to specialists. *Id*. (citing AR at 252-361, 400-10, 426-38, 450-84, 505-09). In light of his unique treating relationship, plaintiff asserts that "Dr. Jacobsen's opinion should be entitled to significantly more weight than the non-examining physicians who issued opinions, as he is in the best position to have obtained a longitudinal picture of Plaintiff's impairments, and his opinion is well supported by the medical evidence in the record." *Id*. at 16-17 (citing 20 C.F.R. § 404.1527(d)(2)(i), 416.927(d)(2)(i)).

The Commissioner responds that the ALJ could reasonably reject Dr. Jacobsen's opinion as inconsistent with plaintiff's testimony regarding her ability to lift, because plaintiff "testified that she could lift up to twenty pounds when she was asked how much she could lift without problems. This is plainly inconsistent with Dr. Jacobsen's opinion that she could never lift twenty pounds, even when Plaintiff's caveat that twenty was 'pushing it' is considered." Dkt. 14 at 4. The Commissioner also points that although the ALJ did not give reasons to specifically reject the other physical limitations Dr. Jacobsen included in the check-box form, "one contradiction is legally sufficient to support the ALJ's inference that Dr. Jacobsen's opinion is not a reliable assessment of Plaintiff's actual abilities and limitations." *Id*. at 4-5. With respect to Dr. Jacobsen's mental capacity questionnaire, the Commissioner argues that the ALJ reasonably rejected Dr. Jacobsen's opinions because of their inconsistency with plaintiff's admission that she reads for up to an hour at a time. *Id*. at 5 (citing AR at 27).

REPORT AND RECOMMENDATION - 10

Dr. Jacobsen opined that plaintiff's symptoms were "constantly" severe enough "to interfere with the attention and concentration required to perform simple work-related tasks," AR at 445, which the Commissioner argues is at odds with plaintiff's statement to a consultative examiner that she "enjoys reading and is able to sustain this activity for 1 hour at a time." *Id*. (citing AR at 22, 27, 414).[3] Thus, the Commissioner asserts "this was another valid reason for finding Dr. Jacobsen's opinion to be an unreliable assessment." *Id*.

Plaintiff replies that the Commissioner takes Dr. Jacobsen's statement about plaintiff's ability to lift, as well as plaintiff's testimony, out of context in order to present them as inconsistent. Dkt. 15 at 2. Specifically, "Dr. Jacobsen was asked whether Plaintiff can lift twenty pounds 'frequently,' 'occasionally,' or 'never,' in a competitive work situation." *Id.* (citing AR at 446). Given these choices, Dr. Jacobsen opined that plaintiff can "never" lift and carry twenty pounds in a competitive work situation. *Id*. Thus, plaintiff's testimony that she could lift twenty pounds at one time does not indicate that she could "occasionally" or "frequently" lift twenty pounds in a competitive work situation. *Id.* Plaintiff contends that the ALJ erroneously construes her statement that she could "push" herself to lift twenty pounds to mean that she can regularly lift twenty pounds in a competitive work situation. *Id*. at 3.

Similarly, with respect to plaintiff's statement that she can read for up to an hour at a time, plaintiff argues that the ALJ failed to explain how the ability to read for an hour is inconsistent with Dr. Jacobsen's opinion that her symptoms are "constantly" severe enough to interfere with the attention and concentration required to perform simple work-related tasks.

---

[3] Plaintiff also argued the ALJ erred by failing to consider the factors for evaluating medical evidence outlined in 20 C.F.R. § 404.1527, 416.927. The Commissioner correctly points out that a regulatory requirement that an ALJ "consider" factors or issues does not necessarily create a duty to specifically discuss the factors in the decision if they are not dispositive.

REPORT AND RECOMMENDATION - 11

Dkt. 15 at 3. Plaintiff points out that the Programs Operations Manual System ("POMS") § 25001.001.B.12 defines "constantly" as "the activity or condition occurs two-thirds or more of an eight hour day." *Id*. Thus, "the fact that Plaintiff can read for an hour at a time does not contradict Dr. Jacobsen's opinion that her pain is severe enough to interfere with her ability to concentrate for two-thirds or more of an eight-hour day." *Id.*

Plaintiff is correct. As discussed above, the ALJ only offered one reason for rejecting Dr. Jacobsen's physical residual capacity assessment. The ALJ considered Dr. Jacobsen's opinion regarding plaintiff's ability to lift to be more restrictive than plaintiff's own testimony that she can lift "ten to 20 pounds, 20 is pushing it." AR at 47. The Court agrees with plaintiff that Dr. Jacobsen's opinion that plaintiff can only "occasionally" lift and carry ten pounds in a competitive work situation, where "occasionally" is defined as "less than 1/3 of the eight-hour workday," and plaintiff can "never" lift 20 pounds in a competitive work situation, is not inconsistent with plaintiff's testimony that she can lift ten to twenty pounds at maximum but lifting "20 [pounds] is pushing it." AR at 47, 446. Both plaintiff's testimony and Dr. Jacobsen's opinion indicate that plaintiff cannot *regularly* lift and carry twenty pounds as part of her duties in a competitive work environment. Thus, there is no "inconsistency" between plaintiff's testimony and Dr. Jacobsen's opinion. This was not a specific and legitimate reason for the ALJ to reject Dr. Jacobsen's physical residual functional capacity assessment.

In addition, Dr. Jacobsen's RFC assessment included numerous other limitations that contradicted the ALJ's RFC assessment in this case. For example, Dr. Jacobsen opined that plaintiff needs to recline or lie down during an eight-hour workday in excess of typical workday breaks, needs to be able to shift positions from standing, sitting, and walking at will, and will be absent from work three to four times per month. AR at 445-46. The ALJ did not provide any reasons for rejecting these aspects of Dr. Jacobsen's opinion.

REPORT AND RECOMMENDATION - 12

  The Court is also not persuaded by the one reason given by the ALJ for rejecting Dr. Jacobsen's mental capacity assessment. AR at 447-49. Specifically, the ALJ considered Dr. Jacobsen's opinion that plaintiff "had moderate to extreme limitations in concentration" to be inconsistent with plaintiff's statement to the consultative examiner that she "enjoys reading and is able to sustain this activity for 1 hour at a time." AR at 22, 27, 414, 447. Although the ALJ does not identify exactly what functional limitation in the mental capacity assessment he is referring to, the most applicable one appears to be Dr. Jacobsen's finding that plaintiff's ability to "maintain attention and concentration for <u>extended</u> periods" was markedly limited. AR at 447. Similarly, Dr. Jacobsen indicated on the RFC questionnaire that plaintiff's symptoms will "constantly" interfere with the attention and concentration required to perform simple work-related tasks." AR at 445.

  The ALJ failed to explain how plaintiff's ability to read for an hour was inconsistent with Dr. Jacobsen's opinion about plaintiff's attention and concentration on either the mental capacity assessment or RFC questionnaire. With respect to Dr. Jacobsen's statement that plaintiff's symptoms are "constantly" severe enough to interfere with the attention and concentration required to perform simple work-related tasks, the word "constantly" does not mean 100 percent of the work day in the social security context. The Social Security Administration's *Programs Operations Manual System* ("POMS") § DI 25001.001.B.12 defines "constantly," as it is used in an RFC, as meaning that "the activity or condition occurs two-thirds or more of an eight hour day."[4] Thus, the fact that plaintiff is able to concentrate for long enough to read for one hour at a time does not contradict Dr. Jacobsen's opinion that her

---

[4] By contrast, in the Social Security context, the term "frequent" describes how often a worker performs a certain task, and is defined as "from one-third to two-thirds of the time." SSR 83-10; *see Gallant v. Heckler*, 753 F.2d 1450 n.1 (9th Cir. 1984). *See also* POMS § DI 25001.001.B.34.

REPORT AND RECOMMENDATION - 13

pain is severe enough to interfere with her ability to concentrate for two-thirds or more of an eight-hour day. Similarly, the Court is not persuaded that reading for one hour undercuts Dr. Jacobsen's finding that plaintiff's ability to "maintain attention and concentration for <u>extended</u> periods" was markedly limited. AR at 447 (emphasis in original). This was not a specific and legitimate reason for the ALJ to reject Dr. Jacobsen's opinion.

Finally, the ALJ's only remaining reasons for rejecting Dr. Jacobsen's mental capacity assessment are plaintiff's "performance during her consultative examination" and "the other medical evidence of record." Apart from plaintiff's statement that she is able to read for one hour, however, the ALJ does not explain how plaintiff's performance during her consultative examination conflicts with Dr. Jacobsen's opinion. AR at 27. Similarly, the ALJ's reference to "other medical evidence of record" does not achieve the level of specificity that is required to reject a doctor's opinion. Notably, the Commissioner does not argue that these conclusory statements are sufficient bases for rejecting Dr. Jacobsen's opinion. *See* Dkt. 14 at 5. An ALJ must do more than offer his conclusions; he must also explain why his interpretation, rather than the treating doctor's interpretation, is correct. *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007) (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)).

Accordingly, the ALJ erred by rejecting Dr. Jacobsen's opinion without providing specific and legitimate reasons, supported by substantial evidence. *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). This case must therefore be reversed and remanded for further administrative proceedings. On remand, the ALJ shall re-evaluate the medical evidence, including Dr. Jacobsen's RFC assessment and mental capacity assessment. The ALJ shall also re-evaluate the opinions of Drs. Ekemo, Palermo, and Wolfe and Phan, being careful not to "cherry pick" the evidence by focusing only on parts of the opinions which are favorable to a finding of nondisability.

REPORT AND RECOMMENDATION - 14

B. The ALJ Shall Re-Evaluate Plaintiff's Credibility

Plaintiff argues that the ALJ improperly evaluated her testimony about her symptoms and limitations. Dkt. 13 at 21-22. For example, plaintiff argues that the ALJ failed to evaluate plaintiff's testimony regarding the dosage, effectiveness and side effects of plaintiff's medication, which can often cause fatigue. *Id.* at 21. Plaintiff points out that in Dr. Jacobsen's RFC questionnaire he indicated that she would experience drowsiness as a side effect of her medication, and that this would impact her capacity for work. Thus, if Dr. Jacobsen's opinion is credited, his opinion would support her allegations. *Id.* (citing AR at 445). *See also* AR at 250 (Dr. Jacobsen's January 21, 2010 treatment note indicating that plaintiff asked to "cut down" her pain medications due to fatigue).[5]

The ALJ did not find that plaintiff was malingering and was thus required to provide "clear and convincing" reasons for rejecting her testimony. *Smolen v. Chater,* 80 F.3d 1273, 1284 (1996). Because this case should be remanded for reconsideration of the medical evidence, and the ALJ's credibility determination was inextricably intertwined with the ALJ's assessment of the medical evidence (particularly Dr. Jacobsen's opinions), the ALJ's credibility finding should also be revisited on remand. After re-evaluating the medical evidence, including Dr. Jacobsen's RFC assessment and mental capacity assessment, the ALJ will be in a better position to assess plaintiff's credibility. Similarly, the ALJ shall revisit his RFC assessment and step four findings.

---

[5] Plaintiff further argues that the ALJ erred by discounting her credibility based upon her receipt of unemployment benefits and her daily activities. Dkt. 13 at 21-22.

REPORT AND RECOMMENDATION - 15

## VIII.   CONCLUSION

For the foregoing reasons, the Court recommends that this case be REVERSED and REMANDED to the Commissioner for further proceedings not inconsistent with the Court's instructions.  A proposed order accompanies this Report and Recommendation.

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit by no later than **November 20, 2014**.  Failure to file objections within the specified time may affect your right to appeal.  Objections should be noted for consideration on the District Judge's motion calendar for the third Friday after they are filed.  Responses to objections may be filed within **fourteen (14)** days after service of objections.  If no timely objections are filed, the matter will be ready for consideration by the District Judge on **November 21, 2014**.

This Report and Recommendation is not an appealable order.  Thus, a notice of appeal seeking review in the Court of Appeals for the Ninth Circuit should not be filed until the assigned District Judge acts on this Report and Recommendation.

DATED this 6th day of November, 2014.

JAMES P. DONOHUE
United States Magistrate Judge